Michelle Tafoya Weinberg
TAFOYA LAW FIRM, PLLC
P.O. Box 398
Whitefish, MT 59937
Phone: (406) 314-3583
michelle@tafoyalawfirm.com

Lindsey W. Hromadka
J.W. ANDERSON & ASSOCIATES, PLLC
P.O. Box 1424
Whitefish, Montana 59937
Phone: (406) 863-9681
lindsey@jwalaw.net

Timothy Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, Montana 59807
Phone: (406) 721-1435
tim@bechtoldlaw.net

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| NICOLE L. CROY, JEFFREY D. COLLINS, CAM J. COLLINS, SHAEN D. MCELRAVY, JODY A. MCELRAVY, KAREN M. HAYWARD, RONALD C. HAYWARD, and BRAD MAGRUDER, <br><br> Plaintiffs, <br><br> vs. | Cause No. _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL** |

| |
|---|
| RAVALLI COUNTY, in its official capacity, BOARD OF COMMISSIONERS OF RAVALLI COUNTY, in its official capacity, LEE E. FOSS, FOSS REALTY, INC., a Montana Profit Corporation, WESTERN MONTANA EXCAVATION LLC., a Montana Limited Liability Company, DONALD MORTON, ALEXANDRA MORTON, and SUNNYSIDE ORCHARDS, LLC, a Foreign Limited Liability Corporation, by and through its manager, STARLIGHT INTERESTS, LLC, a Georgia Limited Liability Company, and John Does 1-15, |
| Defendants. |

COME NOW, Plaintiffs Nicole Croy, Jeffrey Collins, Cam Collins, Shaen McElravy, Jody McElravy, Karen Hayward, Ronald C. Hayward, and Brad Magruder, by and through their attorneys, Michelle Tafoya Weinberg of Tafoya Law Firm, PLLC, Lindsey W. Hromadka of J.W. Anderson & Associates, PLLC and Timothy Bechtold of Bechtold Law Firm, PLLC, and allege as follows:

## PARTIES

1. At all relevant times, Plaintiffs were and are citizens and residents of Ravalli County, Montana.

2. Defendant Ravalli County ("County") is a political subdivision of the State of

Montana and is a validly existing and established local government entity with general government powers.  Defendant Board of Commissioners of Ravalli County ("Board" or "Commissioners") is the legislative and administrative body of the County.  The actions of the County and Commissioners (collectively "Public Defendants"), as described in this Complaint, occurred within Ravalli County, Montana, and constitute "state action" as that term has been interpreted by relevant case law.

3.  Defendant Sunnyside Orchards, LLC owns and has sold property located along Teddy Bear Lane and Northview Drive in the Sunnyside Orchards tracts, which includes but is not limited to the following lots legally described as SUNNYSIDE ORCHARDS, S31, T10 N, R19 W, LOTS 21, 22, 23, 24, 25 BLK 6, all in Ravalli County.  Starlight Interests LLC is the registered manager of Sunnyside Orchards, LLC, and Donald and Alexandra Morton are members of Starlight Interests LLC.

4.  Defendant Lee E. Foss ("Foss") is a licensed broker in Hamilton, Montana, is the owner of Foss Realty, Inc. ("Foss Realty"), and is a representative of Sunnyside Orchards, LLC who, on information and belief, has facilitated the sale of lots and contracts for deeds on behalf of Sunnyside Orchards, LLC in the Sunnyside Orchards tracts, which includes but is not limited to the lots along

Teddy Bear Lane and Northview Drive legally described above.   Upon information and belief, at all relevant times, Foss has been the agent or employee of Sunnyside Orchards, LLC and was acting within the course and scope of that agency or employment.

5.   Defendant Western Montana Excavation, LLC is a Montana Limited Liability Company located in Victor, MT ("Western Montana Excavation").   On information and belief, Western Montana Excavation excavated, graded, and otherwise built what Plaintiffs describe as an illegal, unpermitted road on what once may have been the County's public easement between Teddy Bear Lane and Northview Drive in Stevensville, Montana (referred to herein as the "Foss Road") at the direction of Defendants Foss/Foss Realty, Sunnyside Orchards, LLC, Starlight Interests LLC, and Donald and Alexandra Morton (collectively "Private Defendants").   At all relevant times, Western Montana Excavation was the agent, employee, or contractor of Defendants Foss/Foss Realty, Sunnyside Orchards, LLC, Starlight Interests LLC, and Donald and Alexandra Morton and was acting within the course and scope of that agency, employment, or contract relationship.

## JURISDICTION AND VENUE

6.   This action is brought pursuant to 42 U.S.C. § 1983.

7.  Subject-matter jurisdiction is conferred by 28 U.S.C. § 1331.  Supplemental jurisdiction over Plaintiffs' related state-law claims is pursuant to 28 U.S.C. § 1367(a), as these claims arise from the same transactions or occurrences as the federal claims and arise out of a common nucleus of operative fact.

8.  This Court has jurisdiction over the parties and the subject matter of this action. Plaintiffs include individual property owners with property boundaries within, adjacent to, or in close proximity to the Foss Road. Plaintiffs are otherwise aggrieved by the Foss Road and their injuries are different from those of the general public because of their use and enjoyment of the area.  Plaintiffs have standing because their rights, status, or legal relationships are affected by the Foss Road. Moreover, jurisdiction is also proper due to diversity of parties and the amount in controversy.

9.  Venue is proper in this Court because the malicious activity giving rise to these actions occurred in Ravalli County, Montana, within this District and Division. The Defendants reside or do business in this District, and the causes of action arose in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

10. On information and belief, between May and August of 1909, the now defunct Bitter Root Valley Irrigation Company ("Irrigation Company") filed a plat map

for the Townsite of Bitter Root and the associated Sunnyside Orchards tracts. The map contained language granting all streets and alleys "to the use of the public forever," but did not label the streets and alleys on the map.  The map was not signed or approved by the Commissioners.

11. On July 29, 1909, the Irrigation Company filed a plat map for the Sunnyside Orchards No. 2, a subdivision located south of the Bitter Root townsite and the associated Sunnyside Orchard tracts, which was signed and approved by the Commissioners on August 4, 1909.

12. On October 16, 1909, the Irrigation Company filed a plat map for the Sunnyside Orchards No. 3, a subdivision located south of the Bitter Root townsite and the associated Sunnyside Orchard tracts, which was subsequently signed and approved by the Commissioners on October 22, 1909.

13. On March 1, 1910, the Irrigation Company filed a plat map for the Sunnyside Orchards No. 4, a subdivision located east of the Bitter Root townsite and the associated Sunnyside Orchard tracts, which was subsequently signed and approved by the Commissioners on March 7, 1909.

14. On March 25, 1913, the Irrigation Company filed an amended plat map for the Townsite of Bitter Root and the associated Sunnyside Orchards tracts.  The amended map was not signed or approved by the Commissioners.

15. The Irrigation Company sought to attract wealthy investors from out of state to buy individual lots in what is now known as the "Sunnyside Orchard Tracts." However, the Irrigation Company went bankrupt in 1916, the Great Depression followed, and the Orchard Tract lots were subsequently sold off, often in large quantities and at a deep discount to farm and ranch operations.

16. On March 2, 1926, the Commissioners approved a petition to abandon the acreage, lots and blocks of the Bitter Root Townsite.

17. On April 5, 1926, the Commissioners reconsidered the Bitter Root Townsite abandonment petition and their minutes reflect the following action: "In the matter of returning to acreage lots and blocks in Bitter Root Townsite, which was approved by the Board in their minutes of March 2nd, 1926, the petition was reconsidered by the Board and East Side Addition to Bitter Root Townsite was returned to Lot 28, Blk. 4, Sunnyside Orchards No. 4, to which it originally belonged and the following streets used as roads were ordered not to be closed: Summit Avenue, Pine Avenue along Southerly and Easterly sides of Blocks Nos. 5 and 7, and Park Street along Southerly sides of Blocks 4, 5, and 6 and Sunnyside Avenue being the main north and south highway and south half of Park Street on the south side of Blocks 13, 14, 21, and Lots 7 and 8 in Block 22." Ravalli County, *Ravalli County Commissioners Journal Vol. 4*, 636 (April 5,

1926).

18. On July 14, 1970, county assessor R. Tillman made the following notation on the County's plat map #280, an undated map showing the Bitter Root Townsite and the Sunnyside Orchard Tracts: "Returned to acreage. Commrs' Journal Vol 4 pages 633 & 636 (No. 11 only partially returned see Journal 4 pg 636 which still leaves [P]ine, [S]ummit [A]ve. & most of Park Street open to public use.)."

19. Plaintiffs each own approximately ten (10) acres of real property located in the Sunnyside Orchards tracts associated with the abandoned Bitter Root townsite, which is legally described as Section 31, Township 10 N, Range 19 W, Ravalli County, Montana (collectively "Neighbors' Properties").

20. The County and the Commissioners have jurisdiction over the roads and public easements dedicated to the County and have an obligation to require individuals hoping to establish a new road to petition for the creation of a new road pursuant to Montana statutory procedures codified at Mont. Code Ann. §§ 7-14-2601, *et seq.* The County and the Commissioners also have an obligation to require permits for road encroachments, and require the removal of illegal road encroachments. The County and the Commissioners must act within its police power and must abide by the U.S. and Montana Constitutions. Additionally, the Defendants must not intentionally or negligently engage in tortious conduct. As

set forth herein, the Defendants failed to follow these duties.

21. On information and belief, Teddy Bear Lane and Northview Drive are private driveways named through the County's acceptance of separate road naming petitions sometime after 1978. Teddy Bear Lane and Northview Drive run generally north-to-south through the Neighbors' Properties such that Plaintiffs own land on the east and west sides of Teddy Bear Lane and Northview Drive.

22. A utility easement and power line runs between Teddy Bear Lane and Northview Drive. A power pole sits at the northern end of Northview Drive in the middle of what once may have been a public easement for a right of way, but which has since been terminated.

23. Defendant Sunnyside Orchards LLC owns several lots along Teddy Bear Lane and Northview Drive as well as immediately west of the Neighbors' Properties.

24. On information and belief, Foss has sold lots on behalf of Sunnyside Orchards LLC to contract purchasers along Teddy Bear Lane and Northview Drive as well as immediately west of the Neighbors' Properties.

25. On information and belief, the Commissioners have consistently processed road abandonment petitions in accordance with the statutory requirements contained in Title 7, Chapter 14, Part 26 of the Montana Code Annotated. By way of

example and not limitation, as per normal practice of the County and Commissioners, on October 21, 2016, the Commissioners received a road abandonment petition from Bob Kirkpatrick ("Kirkpatrick Petition"), a landowner seeking to abandon a platted roadway that was never built, labeled as Cold Springs Trail, in the Sunnyside Orchards No. 4 Subdivision, a platted subdivision adjacent to the Sunnyside Orchards tracts.  On January 3, 2017, the County Clerk & Recorder informed the Commissioners that the Kirkpatrick Petition conformed with statutory requirements and the Commissioners could proceed with the process to abandon the road.  On February 3, 2017, the Commissioners appointed road viewers to conduct an onsite examination of the road and, on February 6, 2017, the viewers recommended abandonment of the right of way.

26. On February 14, 2017, the Commissioners received a road abandonment petition from the Plaintiffs and other freeholders in Ravalli County ("Plaintiffs' Petition"), seeking to abandon the unbuilt right of way between Northview Drive and Teddy Bear Lane in the Sunnyside Orchards tracts.

27. After being told by the County that the petition needed additional signatures, Plaintiff Brad Magruder ("Magruder"), on behalf of the neighbors, re-submitted the Plaintiffs' Petition on March 28, 2017.  The County accepted the petition and

forwarded it to the County Clerk & Recorder for signature verification.

28. On information and belief, at some point during the signature gathering and petition submission process, Foss became aware of the Neighbors' Petition.

29. On information and belief, sometime after the Plaintiffs submitted their original or corrected petition, the Commissioners created an informal policy or custom in direct response to the Plaintiffs' Petition, making it a requirement for 100% of the surrounding landowners to sign the road abandonment petition before the County would act on it (hereinafter the "100% Rule"). The County sanctioned and implemented the Commissioners' 100% Rule through subsequent communication with the Plaintiffs, as described below.

30. On information and belief, the Commissioners have held public hearings on road abandonment petitions pursuant to Montana statutory requirements, even after their adoption of the 100% Rule. For example, on March 29, 2017, the Commissioners held a public hearing on the Kirkpatrick Petition, but refused to grant abandonment because one of the landowners adjoining easement refused to sign the petition.

31. In contrast to the Kirkpatrick Petition, the County and Commissioners failed to act on the Plaintiffs' Petition within the prescribed statutory period, initially citing the County's preparation for the May 25, 2017 congressional special

election as the excuse for the delay.

32. On information and belief, on or about June 7, 2017, Foss and Western Montana Excavation, acting together and in concert and on behalf of Sunnyside Orchards LLC, entered onto one or more of the Neighbors' Properties with heavy equipment for the purpose of excavating a road where none existed before between Teddy Bear Lane and Northview Drive.

33. Neither Foss, Western Montana Excavation, nor its principals/contractors/agents were authorized by Plaintiffs to remove gates or fencing from their properties, nor did they attempt to secure permission from Plaintiffs to do so.

34. Neither Foss, Western Montana Excavation, nor its principals/contractors/agents were authorized by Plaintiffs to cut or remove any trees or other vegetation from their properties, nor did they attempt to secure permission from Plaintiffs to do so.

35. Neither Foss, Western Montana Excavation, nor its principals/contractors/agents had obtained permits or authorization from the County for its road building activity.

36. Foss and Western Montana Excavation, acting together and in concert and on behalf of Sunnyside Orchards LLC, themselves and/or through

contractors/agents, did in fact remove gates/fencing, trees/vegetation and excavated, filled, and graded the Foss Road through one or more of the Neighbors' Properties on or about June 8, 2017.

37. Foss and Western Montana Excavation, acting together and in concert and on behalf of Sunnyside Orchards LLC, themselves and/or through contractors/agents, removed trees from the Neighbors' Properties and either disposed of the trees or converted them to their own use.

38. On June 7, 2017, Magruder emailed the County, informing it that Western Montana Excavation, at Foss's direction, was building a road along the entire right of way between Northview Drive and Teddy Bear. Later that day, County Commissioner Greg Chilcott responded to Magruder's email as follows:

> Mr. Magruder,
>
> I just spoke with Clerk & Recorder Regina Plettenberg regarding the petition to abandon the section of R.O.W./easement connecting North View Drive and Teddy Bear Lane. She advised me that it was on her desk and she thought she would be working on the document tomorrow.
>
> I called the Ravalli County Road and Bridge Department and understand that work to open a county road on a public easement would require an encroachment permit to perform the work. As of today, no permit has been issued.
>
> I hope this answers the questions you raised. If I may be of further assistance as to the process of abandonment or permitting, please don't hesitate to contact me.

Email from Greg Chilcott to Brad Magruder, *FW: road abandonment petition* (June 7, 2017, 4:24 PM).

39. On June 8, 2017, Magruder emailed Commissioner Chilcott to report the continuing unpermitted road building activity:

> The contractor Western Excavation hired by Lee Foss realtor is currently putting truck loads of road base on the road and is putting the road thru despite not having a permit. My neighbor and co-sponsor of our petition, Nicole Croy on Teddy [B]ear Ln, just talked to the truck driver and he stated "the road is going thru without a permit..."
>
> Your immediate attention would be appreciated.
>
> Thank you, Brad Magruder

Email from Brad Magruder to Greg Chilcott, *Northview Dr.* (June 8, 2017, 2:43 PM)

40. On June 9, 2017, more than two months after Magruder submitted his corrected Petition, the County Clerk & Recorder informed Magruder that the Plaintiffs' Petition could proceed to the Commissioners for a decision.

41. On June 14, 2017, the Commissioners received the County Clerk & Recorder's memo explaining that the Plaintiffs' Petition conformed with statutory requirements and the Commissioners could proceed with the process to abandon the road.

42. On June 26, 2017, the County emailed Brad Magruder, telling him the Commissioners would not schedule a hearing on the Plaintiffs' Petition due to the new 100% Rule. The County did not explain why the Plaintiffs' Petition was being treated differently than other road abandonment petitions or why the Commissioners would not appoint road viewers to conduct an onsite examination of the right of way or otherwise conform with road abandonment procedures.

43. On August 30, 2017, Shaen and Jody McElravy submitted a letter to the County, protesting the unpermitted work on Teddy Bear Lane, citing the increased traffic, speed of vehicles traveling on Teddy Bear Lane, and the hazardous conditions and safety concerns the Foss Road had created since it was built.

44. On August 31, 2017, the Commissioners conducted a public hearing to discuss the Foss Road ("Public Hearing #1"), but not the Plaintiffs' Petition. During its staff report to the Commissioners, the County Road Department presented what they claimed to be a 1940's aerial map purporting to show a historic road between what is now Teddy Bear Lane and Northview Drive, but also admitting that by the 1950s a through road no longer existed between the two roads. The Road Department further admitted that no permits were obtained for the Foss Road. While the department attempted to establish that the County's policy or

custom for platted, historic non-county maintained roads has been to not require a permit unless the road could be a liability (hereinafter "Historic Road Policy"), the road administrator also admitted that this was "just one of those issues we haven't delved too heavily into...except if someone is going to open up a brand new road." Ravalli Board of Commissioners, *Public Hearing on Teddy Bear and Northview road improvements*, 1:17:45-1:27:25 (Aug. 31, 2017). After listening to the Road Department's staff report, one of the Commissioners admitted they were "muddling through a policy." *Id.*

45. During Public Hearing #1, the Ravalli County Attorney's office also gave a legal opinion on how to consider the construction activity on the Foss Road. After admitting that the County does not have a policy on how to address platted, unbuilt right of ways, the County's attorney stated that a permit is needed to excavate a county road and implied that the Foss Road constituted a trespass. *Id.* at 1:27:25.

46. During Public Hearing #1, one of the Commissioners admitted that the Plaintiffs' Petition "didn't get put through I guess one way or another." Commissioner Chilcott then cited the 100% Rule as the justification for the delay. The Commissioners decided to take no action on the discussion and continued the hearing to October 5, 2017.

47. On October 5, 2017, the Commissioners continued the public hearing from August 31, 2017 ("Public Hearing #2").  During the public comment period Plaintiff Croy explained how the Foss Road had disturbed the peace and quiet on her property, diminished her property value, and caused increased traffic on Teddy Bear Lane.  Ravalli Board of Commissioners, *Public Hearing on Teddy Bear and Northview road improvements*, 1:17:45-1:27:25 (Oct. 5, 2017).  The Commissioners again decided to take no action on the discussion.

48. On January 4, 2018, Plaintiff Croy and Plaintiff Magruder emailed Commissioner Hoffman, explaining how the unsafe conditions on the Foss Road had caused vehicles to get stuck on the Foss Road and had caused drivers to increase their speed to avoid getting stuck on the road.  *See* Email from Nicole Croy to Chris Hoffman, *Fw*. (Jan. 4, 2018); Email from Brad Magruder to Chris Hoffman, *Re: Fw*: (Jan. 4, 2018).

49. On January 18, 2018, Plaintiff Croy emailed Commissioner Hoffman the following, with pictures of a trailer that had gone through her fence: "[i]t was only a matter of time before we said this would happen, thank goodness I was home able to round up my horses. This road is dangerous and shouldn't even be here!!"  Email from Nicole Croy to Chris Hoffman, *the road today*  (Jan. 18, 2018).

50. On April 5, 2018, the Commissioners held a public hearing to discuss the creation of a right of way ordinance for the County's Orchard Tracts ("Public Hearing #3"). The County admitted that it had handled road issues on platted right of way in an ad hoc manner. The County also admitted that while a servient estate may use a platted right of way/public easement in a manner not inconsistent with the dedication, other members of the public do not have a right to use a platted public easement until it is opened as a county road. Ravalli Board of Commissioners, *Discussion and decision on moving forward with an Orchard Tract Right of Way Ordinance*, 58:37-1:17:00 (Apr. 5, 2018).

51. On April 18, 2018, more than a year after Magruder submitted his corrected Petition, the Commissioners' administrator, Glenda Wiles ("Wiles"), asked the Commissioners about moving forward on the Plaintiffs' Petition and was told by one or more of the Commissioners to refund the $150.00 fee. Wiles mailed a refund of the fee to Plaintiff Magruder, but a decision regarding the Neighbors' Petition was not included with the check.

52. Since its construction, the Foss Ross has created unsafe driving conditions on the road and caused damage to one of more of the Plainitffs' properties due to water runoff and diversion activity.

53. On November 16, 2018, the Plaintiffs submitted their notice of claim to the

County pursuant to Mont. Code Ann. § 2-9-301 seeking damages and declaratory relief on their constitutional and tort claims. The County denied the Plaintiffs' request for damages and declaratory relief and instead offered to hold a public hearing on their petition two years after the corrected petition was submitted by the Plaintiffs.

## COUNT I – 42 U.S.C. § 1983: VIOLATION OF PLAINTIFFS' FEDERAL PROCEDURAL DUE PROCESS RIGHTS

54. The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

55. The above facts set forth the deprivation of Plaintiffs' property without due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

56. Public Defendants, in their official capacity as a local government entity and legislative body, respectively, acted under of color of state law by carrying out official duties or, alternatively, by abusing or misusing its power or position. As a natural consequence of their actions, Public Defendants caused a deprivation of Plaintiffs' rights of procedural due process.

57. Plaintiffs were deprived of a plethora of protected property and/or liberty interests under the United States Constitution relative to this action, including

but not limited to the right to the quiet use and enjoyment of their property, the right to exclude others from their property, the right to notice and a hearing before these rights were infringed, their right to have their road abandonment petition investigated, heard and decided under Title 7, Chapter 14, Part 26 of the Montana Code Annotated, and their right to rely on the County and the Commissioners to maintain public order and protect their rights by assisting them in enforcing their property rights.

58. The aforementioned rights were abrogated, infringed, denied, and invaded by the Public Defendants herein.

59. Public Defendants acted according to established rules, procedures, policies, customs, or usages which include but are not limited to: 1) the 100% Rule, which amounted to the arbitrary and capricious deliberately indifferent failure to act on the Plaintiffs' Petition in contravention of clear statutory procedures; and 2) the Historic Road Policy – the arbitrary and capricious invasion of private property under the pretense of "reopening" a previously-existing road, the failure to enforce Montana's road opening procedures under Title 7, Chapter 14, Part 26, MCA, and/or the failure to enforce Montana's road encroachment statutes under Title 7, Chapter 14, Part 21, MCA – that itself violates due process rights.  Alternatively, Public Defendants' conduct was a

"random and unauthorized act" causing a loss for which available state remedies and post-deprivation procedures would not adequately compensate the Plaintiffs.  Alternatively, the Public Defendants' conduct was attributable to their deliberately indifferent failure to adopt policies and sufficient internal procedures to track whether the Plaintiffs' property interests were protected.

60. As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of their properties and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

## COUNT II – 42 U.S.C. § 1983: VIOLATION OF PLAINTIFFS' FEDERAL SUBSTANTIVE DUE PROCESS RIGHTS

61. The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

62. Public Defendants' deprivation of Plaintiffs' protected property or liberty interest in the above referenced statutory road abandonment procedures amounts to a violation of substantive due process because the County and Commissioners' delaying and deceptive conduct in refusing to properly process, investigate, hear, and issue a decision on the Plaintiffs' petition

constituted an arbitrary and irrational failure to act that does not advance any legitimate government purpose.

63. Plaintiffs were also deprived of one or more of their aforementioned protected property and/or liberty interests because the Public Defendants failed to take action to prevent the creation of the Foss Road, thus allowing an illegal road to be created which has caused Plaintiffs to experience increased dust and traffic, water damage and drainage issues, and safety problems.

64. Plaintiffs' deprivation of procedural and substantive due process was attributable to the Public Defendants' aforementioned rules, procedures, policies, customs, or usages.

65. As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of their property and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

## COUNT III - 42 U.S.C. § 1983: VIOLATION OF FEDERAL TAKINGS CLAUSE

66. The allegations set forth in all paragraphs above are plead and incorporated

herein as if fully set forth.

67. The above facts set forth the taking of one or more of Plaintiffs' properties in violation of the Fifth Amendment to the United States Constitution.

68. Public Defendants, under color of state law, effected a private taking of Plaintiffs' real and personal property for private use in violation of Plaintiffs' rights.

69. As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of their properties and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

## COUNT IV - 42 U.S.C. § 1983: VIOLATION OF PLAINTIFFS' FOURTH AMENDMENT RIGHTS

70. The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

71. The above facts set forth the seizure of one or more of Plaintiffs' property in violation of the Fourth and Fourteenth Amendments to the United States

Constitution.

72. Public Defendants, under color of state law, effected a seizure of one or more of Plaintiffs' real and personal properties through the meaningful interference with the Plaintiffs' possessory interests in those properties in violation of Plaintiffs' rights.

73. As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of their property and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

## COUNT V - 42 U.S.C. § 1983: VIOLATION OF EQUAL PROTECTION CLAUSE

74. The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

75. The above facts set forth a class of one discriminatory act in violation of the Fourteenth Amendment to the United States Constitution.

76. Public Defendants, under color of state law, intentionally, and without a rational

basis, treated the Plaintiffs differently than other similarly situated road abandonment petitioners in violation of Plaintiffs' rights to equal protection. The distinction drawn between the Plaintiffs' Petition and others who secured investigations and hearings on their abandonment petitions, including the Kirkpatrick Petition, was not rationally related to any cognizable governmental interest in abandonment procedure and is precisely the sort of arbitrary discrimination proscribed by the equal protection clause.

77. As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of their properties and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

## COUNT VI – ART. II, § 17: VIOLATION OF PLAINTIFFS' PROCEDURAL DUE PROCESS RIGHTS UNDER THE MONTANA CONSTITUTION

78. The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

79. The above facts set forth the deprivation of Plaintiffs' property without due process in violation of Article II, § 17 of the Montana Constitution.

80. Public Defendants committed wrongs under authority of the state, creating the Plaintiffs' private right of action for the violation of the Plaintiffs' right to due process, a self-executing constitutional right which cannot be adequately redressed through a common law cause of action.

81. As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of their property and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

### COUNT VII – ART. II, § 17: VIOLATION OF PLAINTIFFS' SUBSTANTIVE DUE PROCESS RIGHTS UNDER THE MONTANA CONSTITUTION

82. The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

83. The above facts set forth the deprivation of Plaintiffs' property without due process in violation of Article II, § 17 of the Montana Constitution.

84. Public Defendants committed wrongs under authority of the state, creating the Plaintiffs' private right of action for the violation of the Plaintiffs' right to due process, a self-executing constitutional right which cannot be adequately

redressed through a common law cause of action.

85. As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of their properties and requiring Public Defendants to a create a policy or a set of policies to prevent further constitutional violations.

## COUNT VIII – ART. II, § 29: VIOLATION OF THE TAKINGS CLAUSE UNDER THE MONTANA CONSTITUTION

86. The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

87. The above facts set forth the private taking of one or more of Plaintiffs' property in violation of Article II, § 29 of the Montana Constitution.

88. Public Defendants committed wrongs under authority of the state, creating the Plaintiffs' private right of action for the violation of the takings clause, a self-executing constitutional right which cannot be adequately redressed through a common law cause of action.

89. As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be

determined at trial and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of their properties and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

## COUNT IX – ART. II, §§ 10 AND 11: VIOLATION OF THE RIGHT TO PRIVACY AND RIGHT TO BE FREE FROM UNREASONABLE SEIZURES UNDER THE MONTANA CONSTITUTION

90. The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

91. The above facts set forth a seizure of one or more of Plaintiffs' properties and a violation of the Plaintiffs' right to privacy under Article II, §§ 10 and 11 of the Montana Constitution.

92. Public Defendants committed wrongs under authority of the state, creating the Plaintiffs' private right of action for the violation of the Plaintiffs' right to privacy and right to be free from the unreasonable seizure of their properties, self-executing constitutional rights which cannot be adequately redressed through a common law cause of action.

93. As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a permanent injunction enjoining Public

Defendants from taking any additional action to deprive Plaintiffs of their property and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

## COUNT X – ART. II, § 4: VIOLATION OF THE EQUAL PROTECTION CLAUSE UNDER THE MONTANA CONSTITUTION

94. The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

95. The above facts set forth a violation of the Plaintiffs' right to equal protection under Article II, § 4 of the Montana Constitution.

96. Public Defendants committed wrongs under authority of the state, creating the Plaintiffs' private right of action for the violation of the Plaintiffs' right to equal protection, a self-executing constitutional right which cannot be adequately redressed through a common law cause of action.

97. As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of their properties and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

## COUNT XI – TRESPASS

98. The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

99. The conduct and actions of the Defendants as described herein constitute, individually and severally, a trespass to real property.

100. Defendants continue to trespass on Plaintiffs Croy, Magruder, and the Collins' properties.

101. As a direct and proximate cause of Defendants' trespass, Plaintiffs Croy, Magruder, and the Collins' have sustained damages in an amount to be determined at trial.

## COUNT XII – NUISANCE

102. The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

103. The Foss Road constitutes a private and public nuisance against the Plaintiffs, created and sustained by the Defendants.

104. The Foss Road constitutes a continuing nuisance.

105. As a direct and proximate cause of Defendants' trespass, Plaintiffs have sustained damages in an amount to be determined at trial.

## COUNT XIII – NEGLIGENCE

106.   The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

107.   The Defendants owed a duty to Plaintiffs.

108.   The Defendants breached said duty to Plaintiffs.

109.    As a direct and proximate cause of Defendants' negligence, Plaintiffs have sustained damages in an amount to be determined at trial.

## COUNT XIV – 28 U.S.C. § 2201 DECLARATORY JUDGMENT

110.   The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

111.   The private taking by the Public Defendants in this case, to the gain and benefit exclusively of the Private Defendants, presents a live and justiciable controversy.

112.   Pursuant to the provisions of 28 U.S.C. §§ 2201-02, Plaintiffs are entitled to a declaration that the County's public easement between Teddy Bear Lane and Northview Drive has been extinguished, terminated and/or modified to exclude the creation of public streets, alleys, roads and/or highways except that a utility easement remains on the land.

113.   Plaintiffs are entitled to a declaration that the confiscation of real property, the destruction, removal, and confiscation of trees from their real property, and the continued trespass and other tortious harm inflicted on Plaintiffs, all sanctioned by the public Defendants herein, amounts to a private taking of Plaintiffs' property in violation of their rights under the United States Constitution.

114.   Plaintiffs are entitled to a declaration that the Private Defendants herein have no interest, easement, right-of-way, or other right to use or enter Plaintiffs' private property.

## COUNT XV – M.C.A. § 27-8-101 DECLARATORY JUDGMENT

115.   The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

116.   Pursuant to provisions of the Montana Uniform Declaratory Judgment Act, Mont. Code Ann. §§ 27-8-101, *et. seq*., Plaintiffs are entitled to a declaration that the County's public easement between Teddy Bear Lane and Northview Drive has been extinguished, terminated and/or modified to exclude the creation of public streets, alleys, roads and/or highways except that a utility easement remains on the land.

117.   Further, Plaintiffs seek and are entitled to a declaration that the confiscation of real property, and the continued trespass and other tortious harm inflicted on

Plaintiffs all sanctioned by the Public Defendants herein amounts to a private taking of Plaintiffs' property in violation of their rights under the Montana Constitution.

118.   Plaintiffs are entitled to a declaration that the Private Defendants herein have no interest, easement, right-of-way, or other right to use or enter Plaintiffs' private property.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for judgment and relief from this Court in their favor and against Defendants as follows:

1.   Against Public Defendants on all Counts:

    a.  for damages sustained thereunder;

    b.  attorney's fees pursuant to 42 U.S.C. § 1988;

    c.  costs of suit;

    d.  interest;

    e.  a preliminary and permanent injunction barring Defendants from any continued violation of Plaintiffs' constitutional rights;

    f.  a permanent injunction requiring the creation of a policy or a set of policies to prevent further constitutional violations;

    g.  for the declarations as stated herein;

    h.  any and all relief to which Plaintiffs are at law or equity entitled; and

2.   Against Defendants Foss, Western Montana Excavation, Sunnyside Orchards,

LLC, Starlight Interests LLC, and Donald and Alexandra Morton on Counts XI, XII, XIII, XIV and XV:

    i.      for actual and punitive damages;

    ii.      for treble damages pursuant to Mont. Code Ann. § 70-27-206;

    iii.      attorney's fees and costs of suit;

    iv.      interest;

    v.      for an injunction and order requiring Defendants to restore the affected properties to their pre-construction condition.

    vi.      for the declarations as stated herein;

    vii.      any and all relief to which Plaintiffs are at law or equity entitled.

Dated this 26th day of April, 2019

Tafoya Law Firm, PLLC

By: /s/ Michelle T. Weinberg
Michelle T. Weinberg
Attorney for Plaintiffs