Michelle Tafoya Weinberg
TAFOYA LAW FIRM, PLLC
P.O. Box 398
Whitefish, MT 59937
Phone: (406) 314-3583
michelle@tafoyalawfirm.com

Lindsey W. Hromadka
J.W. ANDERSON & ASSOCIATES, PLLC
P.O. Box 1424
Whitefish, Montana 59937
Phone: (406) 863-9681
lindsey@jwalaw.net

Timothy Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, Montana 59807
Phone: (406) 721-1435
tim@bechtoldlaw.net

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| NICOLE L. CROY, JEFFREY D. COLLINS, CAM J. COLLINS, SHAEN D. MCELRAVY, JODY A. MCELRAVY, KAREN M. HAYWARD, RONALD C. HAYWARD, and BRAD MAGRUDER, <br><br> Plaintiffs, <br><br> v. | Case No.: 9:19-cv-0007-DWM <br> Judge Donald W. Molloy <br><br> **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL** |

RAVALLI COUNTY, in its official capacity, BOARD OF COMMISSIONERS OF RAVALLI COUNTY, in its official capacity, LEE E. FOSS, FOSS REALTY, INC., a Montana Profit Corporation, WESTERN MONTANA EXCAVATION LLC., a Montana Limited Liability Company, SUNNYSIDE ORCHARDS, LLC, a Foreign Limited Liability Corporation, by and through its manager, STARLIGHT INTERESTS, LLC, a Georgia Limited Liability Company, and John Does 1-15,

Defendants.

COME NOW, Plaintiffs Nicole Croy, Jeffrey Collins, Cam Collins, Shaen McElravy, Jody McElravy, Karen Hayward, Ronald C. Hayward, and Brad Magruder, by and through their attorneys, Michelle Tafoya Weinberg of Tafoya Law Firm, PLLC, Lindsey W. Hromadka of J.W. Anderson & Associates, PLLC and Timothy Bechtold of Bechtold Law Firm, PLLC, and allege as follows:

## PARTIES

1. At all relevant times, Plaintiffs were and are citizens and residents of Ravalli County, Montana.

2. Defendant Ravalli County ("County") is a political subdivision of the State of Montana and is a validly existing and established local government entity with

general government powers.  Defendant Board of Commissioners of Ravalli County ("Board" or "Commissioners") is the legislative and administrative body of the County.  The actions of the County and Commissioners (collectively "Public Defendants"), as described in this Complaint, occurred within Ravalli County, Montana, and constitute "state action" as that term has been interpreted by relevant case law.

3.   Defendant Sunnyside Orchards, LLC owns and has sold property located along Teddy Bear Lane and Northview Drive in the Sunnyside Orchards tracts, which includes but is not limited to the following lots legally described as SUNNYSIDE ORCHARDS, S31, T10 N, R19 W, LOTS 21, 22, 23, 24, 25 BLK 6, all in Ravalli County.  Starlight Interests, LLC is the registered manager of Sunnyside Orchards, LLC.  Pursuant to County property records, Sunnyside Orchards, LLC owns various properties in care of Alexandra and Don Morton in the Sunnyside Orchard tracts.

4.   Defendant Lee E. Foss ("Foss") is a licensed broker in Hamilton, Montana, is the director and president of Foss Realty, Inc. ("Foss Realty"), and is an agent of Sunnyside Orchards, LLC who, on information and belief, has facilitated the sale of lots and contracts for deeds on behalf of Sunnyside Orchards, LLC in the Sunnyside Orchards tracts, which includes but is not limited to the lots

along Teddy Bear Lane and Northview Drive legally described above.  Upon information and belief, at all relevant times, Foss has been the agent or employee of Sunnyside Orchards, LLC, and Starlight Interests, LLC, and was acting within the course and scope of that agency or employment.

5. Defendant Western Montana Excavation, LLC is a Montana Limited Liability Company located in Victor, MT ("Western Montana Excavation").  On information and belief, Western Montana Excavation excavated, graded, and otherwise built what Plaintiffs describe as an illegal, unpermitted road on what once may have been the County's public easement between Teddy Bear Lane and Northview Drive in Stevensville, Montana (referred to herein as the "Sunnyside Road") at the direction of Defendants Foss, Foss Realty, Sunnyside Orchards, LLC, and Starlight Interests, LLC (Western Montana Excavation, Foss, Foss Realty, Sunnyside Orchards, LLC, and Starlight Interests, LLC are collectively referred to as the "Private Defendants").  At all relevant times, Western Montana Excavation was the agent, employee, or contractor of Defendants Foss, Foss Realty, Sunnyside Orchards, LLC, and Starlight Interests, LLC, and was acting within the course and scope of that agency, employment, or contractual relationship.

## JURISDICTION AND VENUE

6. This action is brought pursuant to 42 U.S.C. § 1983.

---

7.    Subject-matter jurisdiction is conferred by 28 U.S.C. § 1331.  Supplemental jurisdiction over Plaintiffs' related state-law claims is pursuant to 28 U.S.C. § 1367(a), as these claims arise from the same transactions or occurrences as the federal claims and arise out of a common nucleus of operative fact.

8.    This Court has jurisdiction over the parties and the subject matter of this action.   Plaintiffs  include  individual  property  owners  with  property boundaries within, adjacent to, or in close proximity to the Sunnyside Road. Plaintiffs are otherwise aggrieved by the Sunnyside Road and their injuries are different from those of the general public because of their use and enjoyment of the area.  Plaintiffs have standing because their rights, status, or legal relationships are affected by the Sunnyside Road. Moreover, jurisdiction is also proper due to diversity of parties and the amount in controversy.

9.    Venue is proper in this Court because the malicious activity giving rise to these actions occurred in Ravalli County, Montana, within this District and Division.  The Defendants reside or do business in this District, and the causes of action arose in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

10.    On information and belief, between May and August of 1909, the now defunct Bitter Root Valley Irrigation Company ("Irrigation Company") filed

a plat map for the Townsite of Bitter Root and the associated Sunnyside Orchards tracts. The map contained language granting all streets and alleys "to the use of the public forever," but did not label the streets and alleys on the map. The map was not signed or approved by the Commissioners.

11.   On July 29, 1909, the Irrigation Company filed a plat map for the Sunnyside Orchards No. 2, a subdivision located south of the Bitter Root townsite and the associated Sunnyside Orchard tracts, which was signed and approved by the Commissioners on August 4, 1909.

12.   On October 16, 1909, the Irrigation Company filed a plat map for the Sunnyside Orchards No. 3, a subdivision located south of the Bitter Root townsite and the associated Sunnyside Orchard tracts, which was subsequently signed and approved by the Commissioners on October 22, 1909.

13.   On March 1, 1910, the Irrigation Company filed a plat map for the Sunnyside Orchards No. 4, a subdivision located east of the Bitter Root townsite and the associated Sunnyside Orchard tracts, which was subsequently signed and approved by the Commissioners on March 7, 1909.

14.   On March 25, 1913, the Irrigation Company filed an amended plat map for the Townsite of Bitter Root and the associated Sunnyside Orchards tracts. The

amended map was not signed or approved by the Commissioners.

15.    The Irrigation Company sought to attract wealthy investors from out of state to buy individual lots in what is now known as the "Sunnyside Orchard Tracts."  However, the Irrigation Company went bankrupt in 1916, the Great Depression followed, and the Orchard Tract lots were subsequently sold off, often in large quantities and at a deep discount as farm and ranch properties.

16.    On March 2, 1926, the Commissioners approved a petition to abandon the acreage, lots and blocks of the Bitter Root Townsite.

17.    On April 5, 1926, the Commissioners reconsidered the Bitter Root Townsite abandonment petition and their minutes reflect the following action: "[i]n the matter of returning to acreage lots and blocks in Bitter Root Townsite, which was approved by the Board in their minutes of March 2nd, 1926, the petition was reconsidered by the Board and East Side Addition to Bitter Root Townsite was returned to Lot 28, Blk. 4, Sunnyside Orchards No. 4, to which it originally belonged and the following streets used as roads were ordered not to be closed: Summit Avenue, Pine Avenue along Southerly and Easterly sides of Blocks Nos. 5 and 7, and Park Street along Southerly sides of Blocks 4, 5, and 6 and Sunnyside Avenue being the main north and south highway and south half of Park Street on the south side of Blocks 13, 14, 21, and Lots

7 and 8 in Block 22." Ravalli County, *Ravalli County Commissioners Journal Vol. 4*, 636 (April 5, 1926).

18.     On July 14, 1970, county assessor R. Tillman made the following notation on the County's plat map #280, an undated map showing the Bitter Root Townsite and the Sunnyside Orchard Tracts:

>   Returned to acreage. Commrs' Journal Vol 4 pages 633 & 636 (No. 11 only partially returned see Journal 4 pg 636 which still leaves [P]ine, [S]ummit [A]ve. & most of Park Street open to public use.).

19.     Plaintiffs each own approximately ten (10) acres of real property located in the Sunnyside Orchards tracts within the abandoned Bitter Root townsite, which is legally described as Section 31, Township 10 N, Range 19 W, Ravalli County, Montana (collectively "Neighbors' Properties").

20.     The County and the Commissioners have jurisdiction over the roads and public easements dedicated to the County and have an obligation to require individuals seeking to establish a new road to petition for the creation of a new road pursuant to Montana statutory procedures codified at Mont. Code Ann. §§ 7-14-2601, *et seq.*  The County and the Commissioners also have an obligation to require permits for road encroachments, and require the removal of illegal road encroachments.  The County and the Commissioners must act within its police power and must abide by the U.S. and Montana Constitutions.

Additionally, Defendants must not intentionally or negligently engage in tortious conduct. As set forth herein, Defendants failed to follow these duties.

21. On information and belief, Teddy Bear Lane and Northview Drive are private driveways named through the County's acceptance of separate road naming petitions sometime after 1978. Teddy Bear Lane and Northview Drive run generally north-to-south through the Neighbors' Properties such that Plaintiffs own land on the east and west sides of Teddy Bear Lane and Northview Drive.

22. A utility easement and power line run between Teddy Bear Lane and Northview Drive. A power pole sits at the northern end of Northview Drive in the middle of what once may have been a public easement for a right of way, but which was abandoned in 1926, or alternatively, was sought to be terminated by Plaintiffs.

23. Defendant Sunnyside Orchards LLC owns several lots along Teddy Bear Lane and Northview Drive as well as immediately west of the Neighbors' Properties.

24. On information and belief, Foss has sold lots on behalf of Sunnyside Orchards, LLC and Starlight Interests, LLC to purchasers along Teddy Bear Lane and Northview Drive as well as immediately west of the Neighbors' Properties.

25.    On information and belief, the Commissioners have consistently processed road abandonment petitions in accordance with the statutory requirements contained in Title 7, Chapter 14, Part 26 of the Montana Code Annotated.  By way of example and not limitation, as per normal practice of the County and Commissioners, on October 21, 2016, the Commissioners received a road abandonment petition from Bob Kirkpatrick ("Kirkpatrick Petition"), a landowner seeking to abandon a platted roadway that was never built, labeled as Cold Springs Trail, in the Sunnyside Orchards No. 4 Subdivision, a platted subdivision adjacent to the Sunnyside Orchards tracts.  On January 3, 2017, the County Clerk & Recorder informed the Commissioners that the Kirkpatrick Petition conformed with statutory requirements and the Commissioners could proceed with the process to abandon the road.  On February 3, 2017, the Commissioners appointed road viewers to conduct an onsite examination of the road and, on February 6, 2017, the viewers recommended abandonment of the right of way.

26.    On February 14, 2017, the Commissioners received a road abandonment petition from Plaintiffs and other freeholders in Ravalli County ("Plaintiffs' Petition"), seeking to abandon the unbuilt right of way between Northview Drive and Teddy Bear Lane in the Sunnyside Orchards tracts.

27. After being told by the County that the petition needed additional signatures, Plaintiff Brad Magruder ("Magruder"), on behalf of the neighbors, re-submitted the Plaintiffs' Petition on March 28, 2017. The County accepted the petition and forwarded it to the County Clerk & Recorder for signature verification.

28. On information and belief, at some point during the signature gathering and petition submission process, Foss became aware of the Neighbors' Petition and began to prepare to build a road through the right of way.

29. On information and belief, sometime after Plaintiffs submitted their original or corrected petition, the Commissioners created an informal policy or custom in direct response to Plaintiffs' Petition, making it a requirement for 100% of the surrounding landowners to sign the road abandonment petition before the County would act on it (hereinafter the "100% Policy or Custom"). The County sanctioned and implemented the Commissioners' 100% Policy or Custom through subsequent communication with the Plaintiffs, as described below.

30. On information and belief, the Commissioners have held public hearings on road abandonment petitions pursuant to Montana statutory requirements, even after their adoption of the 100% Policy or Custom. For example, on March

29, 2017, the Commissioners held a public hearing on the Kirkpatrick Petition, but refused to grant abandonment because one of the landowners adjoining easement refused to sign the petition.

31.  In contrast to the Kirkpatrick Petition, the County and Commissioners failed to act on Plaintiffs' Petition within the prescribed statutory period, initially citing the County's preparation for the May 25, 2017 congressional special election as the excuse for the delay.

32.  On information and belief, on or about June 7, 2017, Foss and Western Montana Excavation, acting together and in concert and as the agent of Sunnyside Orchards, LLC and Starlight Interests, LLC entered onto one or more of the Neighbors' Properties with heavy equipment for the purpose of excavating a road where none existed before between Teddy Bear Lane and Northview Drive.

33.  Neither Sunnyside Orchards, LLC, Starlight Interests, LLC, Foss, Western Montana Excavation, nor its principals, contractors or agents were authorized by Plaintiffs to remove gates or fencing from their properties, nor did they attempt to secure permission from Plaintiffs to do so.

34.  Neither Sunnyside Orchards, LLC, Starlight Interests LLC, Foss, Western Montana Excavation, nor its principals, contractors or agents were authorized

by Plaintiffs to remove soil or cut or remove any trees or other vegetation from Plaintiffs' properties, nor did they attempt to secure permission from Plaintiffs to do so.

35.   Neither Sunnyside Orchards, LLC, Starlight Interests LLC, Foss, Western Montana Excavation, nor its principals, contractors or agents had obtained permits or authorization from the County for its road building activity.

36.   Foss and Western Montana Excavation, acting together and in concert and as agents of Sunnyside Orchards, LLC and Starlight Interests, LLC, themselves and/or through contractors or agents, did in fact remove gates, fencing, soil, trees, vegetation, and excavated, filled, and graded the Sunnyside Road through the Neighbors' Properties on or about June 8, 2017.

37.   Foss and Western Montana Excavation, acting together and in concert and as an agent of Sunnyside Orchards LLC and Starlight Interest, LLC, themselves and/or through contractors or agents, removed trees from the Neighbors' Properties and either disposed of the trees or converted the trees to their own use.

38.   Foss, both individually and as president and director of Foss Realty, is personally liable for his conduct because he was aware of Plaintiffs' petition and wrongfully participated in the construction of the Sunnyside Road.  His

actions were tortious in nature and he acted against the best interest of his corporation, for his own pecuniary benefit, or with the intent to harm Plaintiffs. Additionally, Foss participated in the tortious conduct as described herein in his capacity as agent for Sunnyside Orchards, LLC.

39.     On June 7, 2017, Magruder emailed the County, informing it that Western Montana Excavation, at Foss's (as agent of Sunnyside Orchards, LLC) direction, was building a road along the entire right of way between Northview Drive and Teddy Bear. Later that day, County Commissioner Greg Chilcott responded to Magruder's email as follows:

> Mr. Magruder,
>
> I just spoke with Clerk & Recorder Regina Plettenberg regarding the petition to abandon the section of R.O.W./easement connecting North View Drive and Teddy Bear Lane. She advised me that it was on her desk and she thought she would be working on the document tomorrow.
>
> I called the Ravalli County Road and Bridge Department and understand that work to open a county road on a public easement would require an encroachment permit to perform the work. As of today, no permit has been issued.
>
> I hope this answers the questions you raised. If I may be of further assistance as to the process of abandonment or permitting, please don't hesitate to contact me.

Email from Greg Chilcott to Brad Magruder, *FW: road abandonment petition* (June 7, 2017, 4:24 PM).

40.   On June 8, 2017, Magruder emailed Commissioner Chilcott to report the

continuing unpermitted road building activity:

> The contractor Western Excavation hired by Lee Foss realtor is
> currently putting truck loads of road base on the road and is
> putting the road thru despite not having a permit. My neighbor
> and co-sponsor of our petition, Nicole Croy on Teddy [B]ear Ln,
> just talked to the truck driver and he stated "the road is going thru
> without a permit..."
>
> Your immediate attention would be appreciated.
>
> Thank you, Brad Magruder

Email from Brad Magruder to Greg Chilcott, *Northview Dr.* (June 8, 2017,

2:43 PM)

41.   On June 9, 2017, more than two months after Magruder submitted his

corrected Petition, the County Clerk & Recorder informed Magruder that

Plaintiffs' Petition could proceed to the Commissioners for a decision.

42.   On June 14, 2017, the Commissioners received the County Clerk &

Recorder's memo explaining that Plaintiffs' Petition conformed with statutory

requirements and the Commissioners could proceed with the process to

abandon the road.

43.   On Jun 14, 2017, Magruder sent the following email to the Commissioners'

administrator, Glenda Wiles ("Wiles"):

Hi Glenda

I emailed Greg Chilcott about this while you were gone and he said a permit was not granted for Lee Foss to put the road in .. But Lee Foss went ahead anyway and put it in and told my neighbor a permit wasn't needed. Sent another email to Greg and he didn't respond. What does the road dept think?

Did the commissioners get the petition from Clerk and Recorder yet?

I'll be out of state June 23- July 4. and August 4 thru August 15 so please don't schedule any public hearings then.

Email from Brad Magruder to Glenda Wiles, *FW: Road abandonment Northview Dr. Stevi.* (June 14, 2017, 1:53 PM)

44.     On June 15, 2017, Wiles responded to Maguder's email as follows:

An update - Lee Foss was in yesterday and Commissioner Chilcott talked to him, and Don Morton called Commr Chilcott on the phone. I do not have a disposition for you on those contacts. Commr Chilcott did talk with our Civil Attorney today. When the Commissioners come out of session I will ask Commr Chilcott how we are to proceed on your petition and what he relayed to Foss and Morton.

Email from Glenda Wiles to Brad Magruder, *FW: Road abandonment Northview Dr. Stevi.* (June 15, 2017, 10:57 AM)

45.     On June 26, 2017, the County emailed Brad Magruder, telling him the Commissioners would not schedule a hearing on Plaintiffs' Petition due to the new 100% Policy or Custom. The County did not explain why Plaintiffs' Petition was being treated differently than other road abandonment petitions or why the Commissioners would not appoint road viewers to conduct an onsite examination of the right of way or otherwise conform with road

abandonment procedures.

46.  On August 30, 2017, Shaen and Jody McElravy submitted a letter to the
County, protesting the unpermitted work on Teddy Bear Lane, citing the
increased traffic, speed of vehicles traveling on Teddy Bear Lane, and the
hazardous conditions and safety concerns the Sunnyside Road had created
since it was built.

47.  On August 31, 2017, the Commissioners discussed the Sunnyside Road
during a regular meeting ("Board Meeting #1"), but did not address Plaintiffs'
Petition.   During its staff report to the Commissioners, the County Road
Department presented what they claimed to be a 1940s aerial map purporting
to show a historic road between what is now Teddy Bear Lane and Northview
Drive, but also admitting that by the 1950s a through road no longer existed
between the two roads.    The Road Department further admitted that no
permits were obtained for the Sunnyside Road.   While the department
attempted to establish that the County's policy or custom for platted, historic,
non-county maintained roads has been to not require a permit unless the road
could be a liability (hereinafter the "Historic Road Policy or Custom"), the
road administrator also admitted that this was "just one of those issues we
haven't delved too heavily into...except if someone is going to open up a brand

new road." Ravalli Board of Commissioners, *Review with possible decision of road improvements on Teddy Bear Lane and North View Lane*, 1:17:45-1:27:25 (Aug. 31, 2017). After listening to the Road Department's staff report, one of the Commissioners admitted they were "muddling through a policy." *Id.*

48. During Board Meeting #1, the Ravalli County Attorney's office also gave a legal opinion on how to consider the construction activity on the Sunnyside Road. After admitting that the County does not have a policy on how to address platted, unbuilt right of ways, the County's attorney stated that a permit is needed to excavate a county road and implied that the Sunnyside Road constituted a trespass. *Id.* at 1:27:25.

49. During Board Meeting #1, one of the Commissioners admitted that Plaintiffs' Petition "didn't get put through I guess one way or another." Commissioner Chilcott then cited the 100% Policy or Custom as the justification for the delay. The Commissioners decided to take no action on the discussion and continued the discussion to October 5, 2017.

50. On October 5, 2017, the Commissioners continued its discussion from Board Meeting #1 ("Board Meeting #2"). During the meeting, Plaintiff Croy explained how the Sunnyside Road had disturbed the peace and quiet on her

property, diminished her property value, and caused increased traffic on Teddy Bear Lane. Ravalli Board of Commissioners, ***Continued from 8 31 17: Review with possible decision of road improvements on Teddy Bear Lane and North View Drive*, 1:17:45-1:27:25 (Oct. 5, 2017). The Commissioners again decided to take no action on the discussion.

51.   On January 4, 2018, Plaintiff Croy and Plaintiff Magruder emailed Commissioner Hoffman, explaining how the unsafe conditions on the Sunnyside Road caused vehicles to get stuck on the Sunnyside Road and caused drivers to increase their speed so as to avoid getting stuck on the road. *See* Email from Nicole Croy to Chris Hoffman, *Fw*. (Jan. 4, 2018); *see also* Email from Brad Magruder to Chris Hoffman, *Re: Fw*: (Jan. 4, 2018).

52.   On January 18, 2018, Plaintiff Croy emailed Commissioner Hoffman the following message, with pictures of a trailer that had gone through her fence: "[i]t was only a matter of time before we said this would happen, thank goodness I was home and able to round up my horses. This road is dangerous and shouldn't even be here!!" Email from Nicole Croy to Chris Hoffman, *the road today* (Jan. 18, 2018).

53.   On April 5, 2018, the Commissioners discussed the possibility of creating a right of way ordinance for the County's Orchard Tracts, which includes the

Sunnyside Orchards tracts and subdivisions ("Board Meeting #3").   The County admitted that it had handled road issues on platted rights of way in an ad hoc manner.  The County also admitted that while a servient estate may use a platted right of way/public easement in a manner not inconsistent with the dedication, other members of the public do not have a right to use a platted public easement until it is opened as a county road.   Ravalli Board of Commissioners, *Discussion and decision on moving forward with an Orchard Tract Right of Way Ordinance*, 58:37-1:17:00 (Apr. 5, 2018).

54.   On April 18, 2018, more than a year after Magruder submitted his corrected Petition, Wiles asked the Commissioners about moving forward on Plaintiffs' Petition and was told by one or more of the Commissioners to refund the $150.00 fee.  Wiles mailed a refund of the fee to Plaintiff Magruder, but a decision regarding the Neighbors' Petition was not included with the check.

55.   Since its construction, the Sunnyside Road has created unsafe driving conditions and caused damage to one of more of Plainitffs' properties due to water runoff and diversion activity.

56.   On November 16, 2018, Plaintiffs submitted their notice of claim to the County pursuant to Mont. Code Ann. § 2-9-301 seeking damages and declaratory relief on their constitutional and tort claims.  On March 12, 2019,

the County denied Plaintiffs' request for damages and declaratory relief and instead offered to hold a public hearing on their petition – almost two years after Plaintiffs submitted their petition to the County.

## COUNT I – 42 U.S.C. § 1983: VIOLATION OF PLAINTIFFS' FEDERAL PROCEDURAL DUE PROCESS RIGHTS

57.    The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

58.    The above facts set forth the deprivation of Plaintiffs' property without due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

59.    Public Defendants, in their official capacity as a local government entity and legislative body, respectively, acted under of color of state law by carrying out official duties or, alternatively, by abusing or misusing its power or position. As a natural consequence of their actions, Public Defendants caused a deprivation of Plaintiffs' rights of procedural due process.

60.    Plaintiffs were deprived of a plethora of protected property and/or liberty interests under the United States Constitution relative to this action, including but not limited to the right to the quiet use and enjoyment of their property, the right to exclude others from their property, the right to notice

and a hearing before these rights were infringed, their right to have their

road abandonment petition investigated, heard and decided under Title 7,

Chapter 14, Part  26 of the Montana Code Annotated, and their right to rely

on the County and the Commissioners to maintain public order and protect

their rights by assisting them in enforcing their property rights.

61.    The aforementioned rights were abrogated, infringed, denied, and invaded

by Public Defendants herein.

62.    Public Defendants acted according to established rules, procedures, policies,

customs, or usages which include but are not limited to: 1) the 100% Policy

or Custom, which amounted to the arbitrary and capricious deliberately

indifferent failure to act on Plaintiffs' Petition in contravention of clear

statutory procedures; and 2) the Historic Road Policy or Custom – the

arbitrary and capricious invasion of private property under the pretense of

"reopening" a previously-existing road, the failure to enforce Montana's

road opening procedures under Title 7, Chapter 14, Part  26, MCA, and/or

the failure to enforce Montana's road encroachment statutes under Title 7,

Chapter 14, Part  21, MCA – that itself violates due process rights.

Alternatively, Public Defendants' conduct was a "random and unauthorized

act" causing a loss for which available state remedies and post-deprivation

procedures would not adequately compensate Plaintiffs.  Alternatively, the Public Defendants' conduct was attributable to their deliberately indifferent failure to adopt policies and sufficient internal procedures to track whether Plaintiffs' property interests were protected.

63.  As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial, and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of their properties and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

## COUNT II – 42 U.S.C. § 1983: VIOLATION OF PLAINTIFFS' FEDERAL SUBSTANTIVE DUE PROCESS RIGHTS

64.  The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

65.  Public Defendants' deprivation of Plaintiffs' protected property or liberty interest in the above referenced statutory road abandonment procedures amounts to a violation of substantive due process because the County and Commissioners' delaying and deceptive conduct in refusing to properly process, investigate, hear, and issue a decision on the Plaintiffs' petition constituted an arbitrary and irrational failure to act that does not advance any

legitimate government purpose.

66.    Plaintiffs were also deprived of one or more of their aforementioned protected property and/or liberty interests because the Public Defendants failed to take action to prevent the creation of the Sunnyside Road, thus allowing an illegal road to be created which has caused Plaintiffs to experience increased dust and traffic, water damage and drainage issues, and safety concerns, among other problems.

67.    Plaintiffs' deprivation of procedural and substantive due process was attributable to the Public Defendants' aforementioned rules, procedures, policies, customs, or usages.

68.    As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of their property and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

## COUNT III - 42 U.S.C. § 1983: VIOLATION OF FEDERAL TAKINGS CLAUSE

69.    The allegations set forth in all paragraphs above are plead and incorporated

herein as if fully set forth.

70.    The above facts set forth the taking of one or more of Plaintiffs' properties in violation of the Fifth Amendment to the United States Constitution.

71.    Public Defendants, under color of state law, effected a private taking of Plaintiffs' real and personal property for private use in violation of Plaintiffs' rights.

72.    As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of their properties and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

## COUNT IV - 42 U.S.C. § 1983: VIOLATION OF PLAINTIFFS' FOURTH AMENDMENT RIGHTS

73.    The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

74.    The above facts set forth the seizure of one or more of Plaintiffs' property in violation of the Fourth and Fourteenth Amendments to the United States

Constitution.

75.    Public Defendants, under color of state law, effected a seizure of one or more
of Plaintiffs' real and personal properties through the meaningful interference
with the Plaintiffs' possessory interests in those properties in violation of
Plaintiffs' rights.

76.    As a direct and proximate result of Public Defendants' violations of
Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount
to be determined at trial and are entitled to a permanent injunction enjoining
Public Defendants from taking any additional action to deprive Plaintiffs of
their property and requiring Public Defendants to create a policy or a set of
policies to prevent further constitutional violations.

**COUNT V - 42 U.S.C. § 1983: VIOLATION OF EQUAL PROTECTION
CLAUSE**

77.    The allegations set forth in all paragraphs above are plead and incorporated
herein as if fully set forth.

78.    The above facts set forth a class of one discriminatory act in violation of the
Fourteenth Amendment to the United States Constitution.

79.    Public Defendants, under color of state law, intentionally, and without a
rational basis, treated Plaintiffs differently than other similarly situated road

abandonment petitioners in violation of Plaintiffs' rights to equal protection. The distinction drawn between Plaintiffs' Petition and others who secured investigations and hearings on their abandonment petitions, including but not limited to the Kirkpatrick Petition, was not rationally related to any cognizable governmental interest in abandonment procedure and is precisely the sort of arbitrary discrimination proscribed by the equal protection clause.

80.    As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of their properties and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

### COUNT VI – ART. II, § 17: VIOLATION OF PLAINTIFFS' PROCEDURAL DUE PROCESS RIGHTS UNDER THE MONTANA CONSTITUTION

81.    The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

82.    The above facts set forth the deprivation of Plaintiffs' property without due process in violation of Article II, § 17 of the Montana Constitution.

83.    Public Defendants committed wrongs under authority of the state, creating

Plaintiffs' private right of action for the violation of Plaintiffs' right to due process, a self-executing constitutional right which cannot be adequately redressed through a common law cause of action.

84.   As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of their property and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

## COUNT VII – ART. II, § 17: VIOLATION OF PLAINTIFFS' SUBSTANTIVE DUE PROCESS RIGHTS UNDER THE MONTANA CONSTITUTION

85.   The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

86.   The above facts set forth the deprivation of Plaintiffs' property without due process in violation of Article II, § 17 of the Montana Constitution.

87.   Public Defendants committed wrongs under authority of the state, creating Plaintiffs' private right of action for the violation of Plaintiffs' right to due process, a self-executing constitutional right which cannot be adequately redressed through a common law cause of action.

88.   As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial, and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of their properties and requiring Public Defendants to a create a policy or a set of policies to prevent further constitutional violations.

## COUNT VIII – ART. II, § 29: VIOLATION OF THE TAKINGS CLAUSE UNDER THE MONTANA CONSTITUTION

89.   The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

90.   The above facts set forth the private taking of one or more of Plaintiffs' property in violation of Article II, § 29 of the Montana Constitution.

91.   Public Defendants committed wrongs under authority of the state, creating Plaintiffs' private right of action for the violation of the takings clause, a self-executing constitutional right which cannot be adequately redressed through a common law cause of action.

92.   As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial, and are entitled to a permanent injunction enjoining

Public Defendants from taking any additional action to deprive Plaintiffs of their properties and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

### COUNT IX – ART. II, §§ 10 AND 11: VIOLATION OF THE RIGHT TO PRIVACY AND RIGHT TO BE FREE FROM UNREASONABLE SEIZURES UNDER THE MONTANA CONSTITUTION

93.   The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

94.   The above facts set forth a seizure of one or more of Plaintiffs' properties and a violation of Plaintiffs' right to privacy under Article II, §§ 10 and 11 of the Montana Constitution.

95.   Public Defendants committed wrongs under authority of the state, creating Plaintiffs' private right of action for the violation of Plaintiffs' right to privacy and right to be free from the unreasonable seizure of their properties, self-executing constitutional rights which cannot be adequately redressed through a common law cause of action.

96.   As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial, and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of

their property and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

## COUNT X – ART. II, § 4: VIOLATION OF THE EQUAL PROTECTION CLAUSE UNDER THE MONTANA CONSTITUTION

97.    The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

98.    The above facts set forth a violation of Plaintiffs' right to equal protection under Article II, § 4 of the Montana Constitution.

99.    Public Defendants committed wrongs under authority of the state, creating Plaintiffs' private right of action for the violation of Plaintiffs' right to equal protection, a self-executing constitutional right which cannot be adequately redressed through a common law cause of action.

100.   As a direct and proximate result of Public Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs have been damaged in an amount to be determined at trial, and are entitled to a permanent injunction enjoining Public Defendants from taking any additional action to deprive Plaintiffs of their properties and requiring Public Defendants to create a policy or a set of policies to prevent further constitutional violations.

## COUNT XI – TRESPASS

101.  The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

102.  The conduct and actions of Defendants as described herein constitute, individually and severally, a trespass to real property.

103.   Defendants continue to trespass on Plaintiffs Croy, Magruder, and the Collins' properties.

104.  As a direct and proximate cause of Defendants' trespass, Plaintiffs Croy, Magruder, and the Collinses have sustained damages in an amount to be determined at trial.

## COUNT XII – NUISANCE

105.  The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

106.  The Sunnyside Road constitutes a private and public nuisance against the Plaintiffs, created and sustained by the Defendants.

107.  The Sunnyside Road constitutes a continuing nuisance.

108.  As a direct and proximate cause of Defendants' trespass, Plaintiffs have sustained damages in an amount to be determined at trial.

## COUNT XIII – NEGLIGENCE

109.  The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

110.  Defendants owed a duty to Plaintiffs.

111.  Defendants breached said duty to Plaintiffs.

112.  As a direct and proximate cause of Defendants' negligence, Plaintiffs have sustained damages in an amount to be determined at trial.

## COUNT XIV – 28 U.S.C. § 2201 DECLARATORY JUDGMENT

113.  The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

114.  The private taking by Public Defendants in this case, to the gain and benefit exclusively of Private Defendants, presents a live and justiciable controversy.

115.  Pursuant to the provisions of 28 U.S.C. §§ 2201-02, Plaintiffs are entitled to a declaration that the County's public easement between Teddy Bear Lane and Northview Drive has been extinguished, terminated and/or modified to exclude the creation of public streets, alleys, roads and/or highways except that a utility easement remains on the land.

116.  Plaintiffs are entitled to a declaration that the confiscation of real property, the

destruction, removal, and confiscation of trees from their real property, and the continued trespass and other tortious harm inflicted on Plaintiffs, all sanctioned by the Public Defendants herein, amounts to a private taking of Plaintiffs' property in violation of their rights under the United States Constitution.

117.   Plaintiffs are entitled to a declaration that the Private Defendants herein have no interest, easement, right-of-way, or other right to use or enter Plaintiffs' private property.

## COUNT XV – M.C.A. § 27-8-101 DECLARATORY JUDGMENT

118.   The allegations set forth in all paragraphs above are plead and incorporated herein as if fully set forth.

119.   Pursuant to provisions of the Montana Uniform Declaratory Judgment Act, Mont. Code Ann. §§ 27-8-101, *et. seq*., Plaintiffs are entitled to a declaration that the County's public easement between Teddy Bear Lane and Northview Drive has been extinguished, terminated and/or modified to exclude the creation of public streets, alleys, roads and/or highways except that a utility easement remains on the land.

120.   Further, Plaintiffs seek and are entitled to a declaration that the confiscation of real property, and the continued trespass and other tortious harm inflicted

on Plaintiffs all sanctioned by Public Defendants herein amounts to a private taking of Plaintiffs' property in violation of their rights under the Montana Constitution.

121.   Plaintiffs are entitled to a declaration that Private Defendants herein have no interest, easement, right-of-way, or other right to use or enter Plaintiffs' private property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment and relief from this Court in their favor and against Defendants as follows:

1.   Against Public Defendants on all Counts:

   a.   for damages sustained thereunder;

   b.   attorney's fees pursuant to 42 U.S.C. § 1988;

   c.   costs of suit;

   d.   interest;

   e.   a preliminary and permanent injunction barring Defendants from any continued violation of Plaintiffs' constitutional rights;

   f.   a permanent injunction requiring the creation of a policy or a set of policies to prevent further constitutional violations;

   g.   for the declarations as stated herein;

   h.   any and all relief to which Plaintiffs are at law or equity entitled; and

2.   Against Defendants Foss, Western Montana Excavation, Sunnyside Orchards,

LLC, and Starlight Interests LLC on Counts XI, XII, XIII, XIV and XV:

    i.      for actual and punitive damages;

    ii.      for treble damages pursuant to Mont. Code Ann. § 70-27-206;

    iii.      attorney's fees and costs of suit;

    iv.      interest;

    v.      for an injunction and order requiring Defendants to restore the affected properties to their pre-construction condition.

    vi.      for the declarations as stated herein;

    vii.      any and all relief to which Plaintiffs are at law or equity entitled.

Dated this 17th day of May, 2019

                        J.W. Anderson & Associates, PLLC

                        By: _____
                        Lindsey W. Hromadka
                        Attorney for Plaintiffs