IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| NICOLE L. CROY, et al., | CV 19–77–M–DWM |
| Plaintiffs, | |
| vs. | ORDER |
| RAVALLI COUNTY, et al., | |
| Defendants. | |

In June 2017, Western Montana Excavation, LLC graded a road between Teddy Bear Lane and Northview Drive in Stevensville, Montana apparently to provide access to a parcel owned by Sunnyside Orchards, LLC. Nicole Croy and other adjacent property owners (collectively "Croy") sued Sunnyside Orchards, its registered manager Starlight Interests, LLC, its realtor Lee Foss, Western Montana Excavation, Ravalli County, and the Ravalli County Board of Commissioners, alleging that the road was illegally built. The crux of the case is whether the disputed road was built on a properly platted public highway, which requires an examination of county records going back over a century.

Foss seeks summary judgment that a public highway was established in 1909 by the plat submitted as Exhibit V, (Doc. 57-1). (Doc. 55.) The other defendants join his motion. (Docs. 59, 60, 63.) Croy seeks to defer a ruling on

1

Foss's motion pending further discovery.  (Doc. 66.)   On the merits, she responds that the relevant plat is found at page 2 of Exhibit H, (Doc. 10-8), and is invalid for failing to comply with the statutory requirements for subdividing property. Alternatively, she argues that if a public highway were properly established, it has since been abandoned.  For the following reasons, Croy's motion for further discovery is denied and Foss's motion for summary judgment is granted.

## BACKGROUND

The following facts are undisputed unless otherwise noted, (*see* Docs. 57, 65-2), and viewed in the light most favorable to Croy, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).  At the outset, it is necessary to address the dispute over the relevant plat since it pervades the parties' factual presentations.  Croy's property and the disputed road are in the Sunnyside Orchards No. 1, or Sunnyside Orchards Eastland Benches, subdivision.  (*See* Doc. 65-2 at ¶¶ 42, 78–80, 87.) Foss contends that Exhibit V is the original plat of the subdivision and that Exhibit H at 2 is a copy.  (*Id.* at ¶¶ 5, 37.)  Croy takes the opposite position.  (*Id.*)  The plats include different notations and certifications, but they show the same subdivision.  (*Compare* Ex. H at 2, Doc. 10-8 at 2 *with* Ex. V, Doc. 57-1.)

However, because Croy asserts that Exhibit H at 2 never validly established Sunnyside Orchards No. 1, she disputes every reference to the subdivision.  For example, to the straightforward assertion that "[e]ach of the parcels of property

2

owned by the Plaintiffs at issue in this case is within the Sunnyside Orchards No. 1 subdivision," Croy responds "[d]isputed as to the existence of Sunnyside Orchards No. 1 subdivision and Plaintiffs' ownership of property within it."  (Doc. 65-2 at ¶ 42.)  Similarly, to a figure illustrating the property at issue in relation to the disputed road, she responds "[d]isputed as to the existence of the Sunnyside Orchards No. 1 subdivision and thus the 'Block 7 Road.'"  (*Id.* at ¶ 70.)  Her persistence in disputing basic facts, such as the location of the property at issue, is unhelpful and distracting.  The factual recitation below disregards Croy's legal objections to Exhibit V couched as factual disputes.

## I.     History of Sunnyside Orchards No. 1

In the early 1900s, the Bitter Root Valley Irrigation Company owned and subdivided land in Ravalli County.  (*Id.* at ¶ 1.)  Relevant here, the Company subdivided the Townsite of Bitter Root in 1909 and four Sunnyside Orchards subdivisions in 1909 and 1910.  (*Id.* at ¶¶ 2–8.)  In 1913, the Company filed an amended Sunnyside Orchards No. 1 plat.  (*See id.* at ¶¶ 26–28.)  From 1972 to 1998, various lots in Sunnyside Orchards No. 1 were further subdivided.  (*Id.* at ¶¶ 32–34.)  Additionally, certain lots and blocks in the Townsite were abandoned, or "return[ed] to acreage," in 1926.  (*Id.* at ¶ 13.)  The parties disagree about whether the amendments to Sunnyside Orchards No. 1 are effective but seem to agree that, in any event, the changes do not implicate the disputed road.  (*See id.* at

¶¶ 31–34, 80.)  The parties dispute whether the partial abandonment of the

Townsite affects this case.  (*Id.* at ¶ 17.)

## II.   The Disputed Road

The disputed road is a segment of a 40-foot wide street that runs north-to-

south between Blocks 6 and 7 on the Sunnyside Orchards No. 1 plats.  (*Id.* at

¶¶ 75, 77–78.)  The image below shows the platted road, with an arrow pointing

approximately to the disputed segment.



(*Id.* at ¶ 75 (image cropped).)  Though the road is one continuous street on the plat,

that is not the reality on the ground.  The actual road was constructed piecemeal.

In 1990, Ravalli County approved a petition to name as "Teddy Bear Lane" the portion of the street from what is now Croy's parcel north toward Porter Hill Road and Dry Gulch Road. (*Id.* at ¶ 82; Ex. AAA, Doc. 57-32.) In 1992, the County approved a petition to name as "Northview Drive" a portion of the street below Teddy Bear Lane, from the southerly junction with Porter Hill Road. (Doc. 65-2 at ¶ 83; Ex. BBB, Doc. 57-33.) Teddy Bear Lane and Northview Drive were not connected to each other; approximately 700 feet separated the southern terminus of Teddy Bear Lane from the northern terminus of Northview Drive, as shown in the aerial photo below. (Doc. 65-2 at ¶¶ 85, 120.)



(Doc. 64-1 at 60 (annotation added).)

In early 2017, certain landowners, including some of the plaintiffs in this suit, petitioned Ravalli County to abandon the 700 feet of platted but undeveloped road between Northview Drive and Teddy Bear Lane. (Doc. 65-2 at ¶¶ 120, 122–23.) The County did not act on the petition. (*Id.* at ¶ 128.) The landowners sought administrative review under Montana law, which ended unfavorably to them. (*Id.* at ¶¶ 129–30, 134–35.) Then, in June 2017, Western Montana Excavation constructed the disputed road to connect Teddy Bear Lane and Northview Drive. (*Id.* at ¶ 104.)

## III.   Procedural History

Croy filed this suit on April 26, 2019. (Doc. 1.) She asserts 15 claims in her Third Amended Complaint: Counts I through X are state and federal constitutional claims against the County and Board of Commissioners, (Doc. 48 at ¶¶ 58–101), Counts XI through XIII are state trespass, nuisance, and negligence claims, respectively, against all defendants, (*id.* at ¶¶ 102–13), and Counts XIV and XV seek declaratory judgments under federal and state law, respectively, on the status of the disputed road, (*id.* at ¶¶ 114–22). Foss moved for summary judgment on February 24, 2020. (Doc. 55.) The other defendants joined his motion soon after. (Docs. 59, 60, 63.) Croy responded and sought relief under Rule 56(d) of the Federal Rules of Civil Procedure on March 24. (Docs. 65, 66.) On July 8, the Court ordered Foss to supplement the record under Rule 56(e) to address

6

evidentiary concerns with Exhibit V.  (Doc. 75.)  Foss complied on July 13.  (Doc. 77.)

**ANALYSIS**

**I.     Croy's Rule 56(d) Motion**

Croy moves under Rule 56(d) to defer consideration of Foss's motion for summary judgment pending further discovery.  (Doc. 66.)  That motion is denied.

**A.     Legal Standard**

Rule 56(d) "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence."  *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (internal quotation marks omitted).  Under the rule, when the party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).[1]  The party must show "(1) it has set forth in affidavit form *the specific facts* it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."  *Stevens*, 899 F.3d at 678 (internal quotation marks

---

[1] Current Rule 56(d) contains the content of former Rule 56(f), without change in substance.  *See* Rule 56(d) advisory committee note (2010).

omitted).  Speculation that additional discovery may uncover material facts is not enough.  *Id.*  Relief should be granted "fairly freely" if a summary judgment motion is filed "before a party has had any realistic opportunity to pursue discovery relating to its theory of the case."  *B.N.S.F. Ry. Co. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).

## B.    Analysis

Croy's Rule 56(d) motion presents a chicken-and-egg problem.  While courts are required to first rule on a Rule 56(d) motion before addressing summary judgment under Rule 56(a), *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007), the substantive law governing the merits analysis determines what facts are essential to summary judgment, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Put differently, to satisfy her burden under Rule 56(d), Croy must "make clear" how the facts she claims to need "would preclude summary judgment."  *Rocky Mtn. Biologicals, Inc. v. Microbix Biosystems, Inc.*, 986 F. Supp. 2d 1187, 1201 (D. Mont. 2013).  Croy has identified six facts on which she seeks further discovery:

> (a) the County' [sic] regulations, ordinances, resolutions, confirmation letters and other documentary evidence that relate to the creation of Teddy Bear Lane and Northview Drive and other private roads in Ravalli County, Montana which will show an intent by Ravalli County, through its Board of Commissioners, to abandon any right of way that existed between Northview Drive and Teddy Bear Lane;

(b) the County's regulations, ordinances, resolutions, correspondence, permits, or other documentary evidence that relate to the power pole located in the middle of Northview Drive at its northern terminus which will show an intent by Ravalli County, through its Board of Commissioners, to abandon any right of way that existed between Northview Drive and Teddy Bear Lane;

(c) the documentary evidence relating to the County's 1926 abandonment petition of the Bitter Root Townsite and Sunny Side Orchards which will show an intent by Ravalli County, through its Board of Commissioners, to abandon any right of way that existed between Northview Drive and Teddy Bear Lane;

(d) documentary evidence and oral testimony relating to County's rationale for not processing Plaintiffs' petition as required by statute and if those reasons were related to the plan to build the illegal, unpermitted road on Plaintiffs' properties which will show an intent by Ravalli County, through its Board of Commissioners, to abandon any right of way that existed between Northview Drive and Teddy Bear Lane;

(e) any documentary evidence and oral testimony relating to Plaintiffs' wrongful detainer claim, including evidence that one or more of the Private Defendants violently entered onto Plaintiffs' real property or by force, threat or menacing conduct refused to leave Plaintiffs' property after being told to do so and then destroyed one or more of Plaintiffs' property, including real property; and

(f) if the Court finds such information needed for its inquiry, documentary evidence of when the Bitterroot Valley Irrigation Company filed the original plat of Sunny Side Orchards Eastland Benches (the "Original Plat") and if there are any records otherwise relevant to the filing of any of the other plats associated with Sunny Side Orchards Eastland Benches and Sunnyside Orchards Nos. 2, 3, and 4, to show that a public highway was never created between Northview Drive and Teddy Bear Lane.

(Weinberger Decl., Doc. 64 at ¶ 31.)

All six requests generically describe broad categories of documents. "[R]equest[s] at this level of generality [are] insufficient for Rule 56(d) purposes." *Stevens*, 899 F.3d at 679.  Moreover, nothing in the supporting affidavit provides a basis to believe the requested evidence exists.  To the contrary, the County defendants explicitly indicated that some records simply could not be found.  (*See* Ex. OOO, Doc. 73-1 at 2 ("I cannot produce what I cannot find[.]"); Doc. 69 at 4.)  But even assuming Croy has identified specific, existing facts, they are not "essential" to resolving the motion for summary judgment.   As discussed below, the issue in this case is not that more discovery is needed to adduce the relevant facts, but that the parties disagree over the key documents at issue.  The resolution of that dispute is dispositive without the need for further discovery.

## II.   Foss's Motion for Summary Judgment

Foss seeks summary judgment that the disputed road was built on a public highway and on all claims predicated on the road's illegality.  (Doc. 55.)  That motion is granted.

### A.    Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Facts are material if they have the potential to affect the outcome of the case. *Anderson*, 477 U.S. at 248.  A dispute is genuine

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  To raise a genuine dispute, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and alteration omitted).  Courts must view all the evidence and draw all justifiable inferences in favor of the nonmoving party without weighing the evidence or making credibility determinations. *Id.* at 255.  However, only evidence that could be presented in an admissible form at trial can be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003).

> ### B.   Analysis

Foss contends that the Sunnyside Orchards No. 1 plat at Exhibit V established the public highway upon which the disputed road was eventually built. Croy responds that the relevant plat is Exhibit H at 2, which is ineffective for failing to comply with the statutory requirements for subdividing property. Alternatively, she argues that Ravalli County abandoned the public highway before the disputed road was built.  Ultimately, Exhibit V shows that a public highway was validly established, which has never been abandoned.  Therefore, all claims that depend on the nonexistence of the public highway fail as a matter of law.

> #### 1.   Establishment of the Public Highway

To determine whether a public highway was validly established depends on

which plat—Exhibit V or Exhibit H at 2—is operative and whether it meets the requirements for subdividing property under applicable law.

### a.    Operative Plat

Early in this case, the parties agreed that Exhibit H at 2 was the original Sunnyside Orchards No. 1 plat.  (Doc. 65-2 at ¶ 26 n.2.)  Indeed, in his July 2019 motion for judicial notice of certain public records, Foss described the two plats included in Exhibit H as the "Original and Amended Plats of Sunnyside Orchards, recorded in the Records of Ravalli County (1909, 1913)."  (Doc. 11 at 2.)  Croy did not respond, which was "deemed an admission that the motion is well-taken." (Doc. 21 at 3.)  The motion was granted on August 20, 2019, (*id.* at 4–5), though the Court later clarified it "ha[d] merely taken judicial notice of the existence of certain public records, not their contents or the validity of the facts stated therein," (Doc. 49 at 2).

As litigation progressed, Exhibit V was discovered and Foss took the position that it is the original Sunnyside Orchards No. 1 plat, while Exhibit H at 2 is a linen copy.  Linen copies were used to reproduce plats more easily.  (Ex. CC, Doc. 57-8 at 5–6; Ex. EE, Doc. 57-10 at 2–3.)  They often displayed only the lot lines, boundaries, and streets without the certifications or notations from the recorded plat.  (*Id.*)  On the other hand, Croy maintains the opposite: that Exhibit H at 2 is the original plat and that Exhibit V is a linen copy.  Neither party is entirely

12

correct.  While Exhibit H at 2 is a linen copy, Exhibit V is not the originally

recorded plat—it is an undated copy, albeit an ostensibly complete one that, unlike

Exhibit H at 2, includes the certifications, notations, and signatures.  This raises an

evidentiary issue about whether Foss can properly use Exhibit V to prove the

contents of the originally recorded plat.

To support his position, Foss relies primarily on the opinions of Ken E.

Jenkins, a surveyor he hired as an expert in this case.  (Ex. CC, Doc. 57-8 at 27–

29.)  Jenkins concluded that Exhibit V shows the recorded plat based on the

Ravalli County Recorder's stamp indicating that that the plat was received and

filed on June 5, 1909, the Ravalli County Commissioners' signatures approving the

plat on June 7, 1909, and the February 1, 1970 notation to "See Amended Plat

Book 2 page 82" referencing the 1913 Amended Plat.  (*Id.* at 28.)  However, as

Jenkins noted, the bottom left corner of Exhibit V states "Copied from the original

plat by L. Oertli, C.E."  (*Id.*)  Leonard Oertli was the elected Ravalli County

Surveyor from 1908 to 1913.  (Doc. 77-2 at ¶ 8.)  Before photocopies, county

officials would hand copy documents, including plats, as paper began to age.  (Ex.

CC, Doc. 57-8 at 27–29.)  According to Jenkins, that the original Sunnyside

Orchards No. 1 plat from 1909 was eventually hand copied by county personnel is

consistent with the age of the plat.  (*Id.*)  This also explains why Exhibit V shows

hand drawn placeholders for the original notary seals.  Jenkins concluded that

Exhibit H at 2 was a linen copy of the Sunnyside Orchards No. 1 plat because it does not include any legal description of the land or any indication that it was recorded, which is common for linen copies in his experience.  (*Id.* at 29.)  In addition to Jenkins's opinions, Foss relies on Ravalli County's admission during discovery that Exhibit H at 2 "is actually linen."  (Ex. EE, Doc. 57-10 at 2.)

Croy fails to genuinely dispute that Exhibit V shows the originally recorded plat or that Exhibit H at 2 is a linen copy.  She has not retained an expert, nor does she contest Jenkins's qualifications or the admissibility of his opinions.  Further, she ignores the County's admission that Exhibit H at 2 is a linen copy and mischaracterizes its other discovery responses.  Specifically, in her first set of discovery requests, Croy asked the County to admit that Exhibit H at 2 "is the original plat of the Townsite of Bitterroot and Sunny Side Orchards,"[2] to which the County responded:

> The County admits that the referenced document <u>appears</u> to be an accurate copy of the Plat of Sunnyside Orchards Eastland Benches, but given the exacting detail of that official document, a positive admission is difficult.  Accordingly, for this and other Requests for Admission, the County is choosing to answer as such, and to produce to the parties a full size, officially certified copy of the referenced document, and will and does admit to the genuineness and authenticity of the document being produced by the County herein.  The County denies that the referenced document constitutes the original plat of the Townsite of Bitterroot.

---

[2] The discovery request refers to Exhibit H by the bates number Croy-00001.  (Ex. 10, Doc. 64-5 at 4 (discovery request); Doc. 65-2 at ¶ 37 (identifying the bates numbers).)

(Ex. 10, Doc. 64-5 at 4–5.)  Further, the County responded to Foss's request to

"[a]dmit the mylar of the 'Plat of Sunny Side Orchards Eastland Benches' is not a

separate, recorded plat," with the statement "[d]enied as written, as the answering

party remains unclear on what is meant by 'separate, recorded plat.'"  (Ex. EE,

Doc. 57-10 at 2.)  Croy cites the admissions as evidence that Exhibit H at 2 is the

original plat.  (*See* Doc. 65-2 at ¶¶ 37–40, 152, 157.)  But these noncommittal

discovery responses do not contradict Jenkins's conclusions or the County's clear

statement that Exhibit H at 2 "is actually linen," (Ex. EE, Doc. 57-10 at 2).

Croy also cites the collection of plats in Exhibit 15 to dispute that Exhibit H

at 2 is a linen copy, but she does not offer any explanation and it is unclear how

they support her position.  (Doc. 65-2 at ¶¶ 37–40 (citing Ex. 15, Doc. 64-10).)

Finally, Croy argues that Exhibit V cannot be the original plat because it was

"[c]opied from the Original Plat by L. Oertli, C.E."  (Doc. 65 at 18; Doc. 65-2 at

¶¶ 155, 158.)  But Foss's expert, Ken Jenkins, agrees that Exhibit V is a copy.  As

discussed above, Jenkins concluded that Exhibit V was a hand drawn copy of the

originally recorded Sunnyside Orchards No. 1 plat.  (Ex. CC, Doc. 57-8 at 28.)

Croy insists that Exhibit V was copied from Exhibit H at 2.  (Doc. 65-2 at ¶¶ 155,

158.)  But she offers no evidence for that assertion and it is not a reasonable

inference given the record.  For example, Croy does not explain where the

notations, certifications, and signatures on Exhibit V were copied from considering

15

they do not appear on Exhibit H at 2.  More importantly, Croy's assertion is flatly inconsistent with the County's admission and Jenkins's conclusion—both undisputed—that Exhibit H at 2 is a linen copy and Jenkins's undisputed explanation of hand copied plats.  Croy has failed to genuinely dispute that Exhibit H at 2 is a linen copy and that Exhibit V is a hand drawn copy of the originally recorded plat.

The question remains whether Exhibit V is admissible to prove the contents of the original 1909 plat.  Generally, the original is required to prove a writing's contents.  Fed. R. Evid. 1002.  However, secondary evidence of the writing is admissible if "all the originals are lost or destroyed, and not by the proponent acting in bad faith."  Fed. R. Evid. 1004(a); *Hendrick v. Hughes*, 82 U.S. 123, 130 (1872) (concluding that a copied plat "was competent secondary evidence of the contents of the original plat which was lost").  Whether the originals have been lost or destroyed, such that other evidence is appropriate, is a threshold question for the court.  *See* Fed. R. Evid. 1008.  Here, the summary judgment record did not initially include any evidence about the status of the original 1909 plat or the diligence of the County's search.  *See, e.g.*, *Sauget v. Johnston*, 315 F.2d 816, 817 (9th Cir. 1963).  However, at the Court's direction, Foss supplemented the record with an affidavit and testimony from Regina Plettenberg, the Ravalli County Clerk and Recorder.  (Docs. 75, 77); Fed. R. Civ. P. 56(e)(1).  Plettenberg's affidavit

establishes that the original 1909 plat could not be located after a thorough search

of the Ravalli County records.  (Doc. 77-1 at ¶ 10.)  Considering secondary

evidence, such as Oertli's copy labeled Exhibit V, is therefore appropriate.

Exhibit V must also be properly authenticated and subject to a hearsay

exception.  "To satisfy the requirement of authenticating or identifying an item of

evidence, the proponent must produce evidence sufficient to support a finding that

the item is what the proponent claims it is."  Fed. R. Evid. 901.  Here, while Croy

challenged Foss's claim about what Exhibit V is, she has not challenged its

authenticity.  To the extent it is relevant to authenticity, the factual dispute resolves

in Foss's favor, as discussed above.  Further, the Ravalli County Recorder has

certified that Exhibit V is a "true and correct copy of the document on record" with

the County.  Accordingly, the document is self-authenticating.  Fed. R. Evid.

902(4); Fed. R. Civ. P. 44(a)(1)(B).

Having been properly authenticated, Exhibit V falls within the hearsay

exception for statements in ancient documents, provided it was prepared before

January 1, 1998.  Fed. R. Evid. 803(16); *Chemehuevi Indian Tribe v. McMahon*,

934 F.3d 1076, 1081 (9th Cir. 2019) (applying exception to a 1907 land survey);

*Koepp v. Holland*, 688 F. Supp. 2d 65, 77 n.8 (N.D.N.Y. 2010) (applying

exception to maps on file in county clerk's office).  That the copy was prepared by

Leonard Oertli, who was the surveyor from 1908 to 1913, and that it includes a

notation made in 1970 by Ray Tillman establish that Exhibit V was prepared

sufficiently long ago to be an ancient document.  (Doc. 77-1 at ¶¶ 8, 11.)

## b.    Statutory Requirements

The status of a platted road is determined according to the laws in effect

when the plat was made.  *See Bailey v. Ravalli Cty.*, 653 P.2d 139, 141 (Mont.

1982); (Doc. 56 at 15; Doc. 65 at 18).  In 1909, the statutory procedures for

establishing a subdivision required the landowner to file an accurate plat showing,

among other things, "[a]ll streets, alleys, avenues and highways, and the width

thereof."  Rev. Code Mont. §§ 3465–66 (1907).  The plat was also required to

include a certificate from the surveyor that the survey was conducted according to

law and a certificate of dedication from the landowner that "the lands included in

all streets, avenues and alleys, and parks or public squares shown on said plat are

hereby granted and donated to the use of the public forever."  §§ 3469–70.  The

effect of the dedication was that the platted roads became "public highways."

§ 1337; *Bailey*, 653 P.2d at 141.

"The standard for determining the existence of a public road, however, is not

proof of strict adherence to these statutory procedures; rather, it is whether 'the

record taken as a whole shows that a public road was created.'"  *Letica Land Co. v.*

*Anaconda-Deer Lodge Cty.*, 362 P.3d 614, 618 (Mont. 2015) (quoting *Reid v. Park*

*Cty.*, 627 P.2d 1210, 1213 (Mont. 1981)).  The "record taken as a whole" standard

reduces the burden of having to produce precise documentary evidence showing

that a public road was validly created a century after the fact.  *Reid*, 627 P.2d at

1213; *Danreuther Ranches v. Farmers Coop. Canal Co.*, 403 P.3d 332, 337 (Mont.

2017).  Croy argues that the standard only applies to roads established by petition,

not to roads established by a platted dedication.  (Doc. 65 at 27–28.)  While the

Montana Supreme Court does not seem to have applied the standard in a plat case,

the rationale is not so limited.  Because the issue here is whether a public highway

was validly established in 1909, the record as a whole standard governs.

Here, the record as a whole shows that the disputed road was established as a

public highway in 1909.  The original plat complied with the requisite statutory

procedures.  It showed the subdivided lots and blocks with their boundaries and the

streets, included a certificate by the surveyor Chester W. Cheatham that the survey

was conducted between March 15 and May 1, 1909, "according to the provisions

of Chapter VI Title II Part IV of the political code of the State of Montana," and

included the certificate of dedication from the Bitter Root Valley Irrigation

Company describing the subdivision and affirming that "the lands included in all,

streets avenues, alleys, parks, and public squares, shown on said plat and survey

hereunto annexed, are hereby granted and dedicated to the use of the public

forever."  (Ex. V, Doc. 57-1.)  Additionally, it was filed with the Ravalli County

Recorder on June 5, 1909, at 4:16 p.m., and approved by the County

Commissioners on June 7, 1909. (*Id.*) Further, Ravalli County has repeatedly recognized the validity of the original plat by approving multiple amendments to it. (Doc. 65-2 at ¶¶ 25–36.) Finally, the deeds by which Croy and the other plaintiffs took title to their respective parcels all reference the Sunnyside Orchards No. 1 plat. (*Id.* at ¶¶ 44, 48, 50, 56, 59, 62, 66.)

Croy does not genuinely dispute any of this. Her argument that the statutory requirements for subdividing land were not met is based entirely on her position that Exhibit H at 2 is the original plat. (Doc. 65 at 17–24; Doc. 65-2 at ¶¶ 21–24.) The only deficiency she identifies in Exhibit V is that the surveyor's certificate mistakenly references Title II of the Revised Codes of Montana rather than Title III, but she does not argue that such a scrivener's error invalidates the plat. (Doc. 65 at 24 n.5.) Further, while Croy disputes the validity of the amendments to the subdivision, she once again does not provide any support for that position beyond her contention that Exhibit H at 2 is the original plat. (Doc. 65-2 at ¶¶ 25–36.) Finally, Croy contends that the Bitter Root Townsite Plat is relevant to whether a public highway was established "because the Sunnyside Orchards plats were extensions of the Townsite Plat." (Doc. 65 at 19–20, 23–24.) However, she offers no factual or legal citation for that proposition. Rather, Jenkins's opinion that the Townsite is a separately platted subdivision—and thus irrelevant—is undisputed in the record. (Ex. CC, Doc. 57-8 at 25–27.) Ultimately, the record as a whole shows

that the Bitter Root Valley Irrigation Company validly platted the Sunnyside

Orchards No. 1 subdivision in 1909 and, in doing so, dedicated the disputed road

as a public highway.

This result is consistent with *Bailey*, which considered the status of a road in

the Sunnyside Orchards No. 3 subdivision.  653 P.2d at 140.  The Montana

Supreme Court concluded that the Sunnyside Orchards No. 3 plat validly dedicated

the road at issue as a public highway.  *Id.* at 141–42.  Croy concedes that the

Sunnyside Orchards No. 3 plat, which is in the record as Exhibit X, is valid.  (Doc.

65-2 at ¶¶ 2, 7; Ex. X, Doc. 57-3.)  Exhibit X includes the same dedications and

certificates as Exhibit V.  (*Compare* Ex. V, Doc. 57-1 *with* Ex. X, Doc. 57-3.)

Accordingly, there is no basis for concluding that the Sunnyside Orchards No. 3

plat, Exhibit X, complied with the requisite statutory procedures, but the Sunnyside

Orchards No. 1 plat, Exhibit V, did not.

### 2.    Abandonment of the Public Highway

Croy argues that even if the disputed road was validly established as a public

highway, Ravalli County has since abandoned it.  "All public highways once

established must continue to be public highways until abandoned by the Board of

County Commissioners of the county in which they are situated, or by operation of

law, or judgment of a court of competent jurisdiction."  Rev. Code Mont. § 1338

(1907); *see also Smith v. Russell*, 80 P.3d 431, 435 (Mont. 2003).  Here, Croy

21

argues that the County's intent to abandon the disputed road is evidenced by the acceptance of the petition to name Teddy Bear Lane and Northview Drive, the placement of a power pole on Northview Drive, the abandonment of certain portions of the Bitter Root Townsite, and the failure to act on the 2016 petition to abandon the area between Teddy Bear Lane and Northview Drive.  (Doc. 65 at 23–41.)  However, the law is clear in Montana that "[a]bandonment cannot be established by mere implication."  *McCauley v. Thompson-Nistler*, 10 P.3d 794, 800 (Mont. 2000).  Indeed, "a public highway cannot be abandoned by anything short of an order by the commissioners, operation of law, or court order."  *Soup Creek LLC v. Gibson*, 439 P.3d 369, 376 (Mont. 2019).  Croy does not argue, and the record does not support, that Ravalli County has taken affirmative, official action to abandon the disputed road.  (Doc. 65-2 at ¶¶ 95–103.)

### 3.    Dependent Claims

Because the disputed road was validly established as a public highway which has never been abandoned, Croy's claims that depend on the nonexistence of a public highway fail as a matter of law.  The record is undisputed that the grading and construction activities occurred entirely within the right of way on the public highway.  (Doc. 65-2 at ¶¶ 106–10; Ex. CC, Doc. 57-8 at ¶¶ 28, 29.)  Accordingly, Croy cannot maintain a claim for trespass, nuisance, or negligence to the extent the alleged negligence is based on the illegality of the disputed road.

22

Because Croy has not pled a wrongful detainer claim, (*see generally* Doc. 48), the parties' arguments on that issue are not addressed.

### CONCLUSION

Accordingly, IT IS ORDERED that Croy's Rule 56(d) motion (Doc. 66) is DENIED and Foss's motion for summary judgment (Doc. 55) is GRANTED on Counts XI, XII, XIV, and XV.  Count XIII survives only to the extent it is based on the defendants' conduct in constructing the road rather than the legality of the road.

IT IS FURTHER ORDERED that within 14 days of this Order, the defendants shall file a brief, not to exceed 10 pages, addressing whether summary judgment is appropriate for Ravalli County and the Board of Commissioners on Counts I through X.  Fed. R. Civ. P. 56(f)(3).  Croy shall then have seven days to file a response brief, not to exceed 10 pages.

DATED this 15th day of July, 2020.

Donald W. Molloy, District Judge
United States District Court